**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Creasman, | No. CV-22-01820-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| Farmers Casualty Insurance Company, | |
| Defendant. | |

In this insurance action, Defendant Farmers Casualty Insurance Company, f/k/a Metropolitan Casualty Insurance Company ("Farmers Insurance") filed a Motion to Dismiss (Doc. 10)[1] with respect to Plaintiff Charles Creasman's First Amended Class Action Complaint ("FAC") (Doc. 1-3 at 4–25).[2]  The FAC brought claims for breach of contract, bad faith, and declaratory relief.  The Court must determine whether the FAC states a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).  For the following reasons, the Court will grant Farmers Insurance's Motion but allow Plaintiff to amend his bad faith claim and claim for declaratory relief.  Consequently,

---

[1] Plaintiff filed a Response (Doc. 13) and Farmers Insurance filed a Reply (Doc. 17). Plaintiff requested oral argument on the matter. The Court finds that the issues have been fully briefed and oral argument will not aid the Court's decision.  Therefore, Plaintiff's request is denied.  *See* Fed. R. Civ. P. 78(b) (court may decide motions without oral hearings); LRCiv 7.2(f) (same).

[2] Plaintiff originally filed his FAC in Arizona Superior Court, claiming Farmers Insurance breached its insurance contract and acted in bad faith when it failed to "stack" Plaintiffs benefits under the policies. (Doc. 1-3 at 4–25); *see also Creasman v. Farmers Cas. Ins. Co. f/k/a Metropolitan Cas. Ins. Co.*, No. CV2022-012824 (Ariz. Super. Ct. Sept. 28, 2022). The action was subsequently removed to this Court.  (Doc. 1).

the Court will also lift its previous order staying the case. (Doc. 27).

## I.   Background[3]

Plaintiff Charles Creasman ("Plaintiff") seeks to lead a class action against Farmers Insurance to enforce its policies regarding uninsured motorist ("UM") and underinsured motorists ("UIM").  (Doc. 1-3 at 5 ¶¶ 3–5).

### A.   Plaintiff's Accident

On August 20, 2016, a nonparty UIM driver caused Plaintiff to sustain injuries while he was walking in a crosswalk.  (*Id*. at 6 ¶ 7).  The nonparty driver was solely at fault; thus, Plaintiff received $100,000 under the bodily injury liability coverage of the nonparty driver's insurance policy.[4]  (*Id*. ¶¶ 10–12).  However, Plaintiff incurred "reasonable and necessary medical expenses in excess of $100,000" and the nonparty driver did not have any other insurance coverage to pay for Plaintiff's remaining damages.  (*Id*. ¶ 9, 13). Plaintiff thus turned to his policy with Farmers Insurance for additional coverage.

### B.   Plaintiff's Policy

At the time of the accident, Plaintiff held Policy No. 7674506760 with Farmers Insurance.  (*Id*. at 27–65) (the "Policy").  The Policy insured four of Plaintiff's vehicles: a 2014 Infiniti Q50; a 2000 Dodge Ram, a 2005 Mini Cooper; and a 2007 Bentley Contine. (*Id*. at 28).  Plaintiff's policy included the following coverages for bodily injury: (1) UM coverage for up to $500,000 per person and $500,000 per collision; and (2) UIM coverage for up to $500,000 per person and $500,000 per collision.  (*Id*.)  Plaintiff claimed UIM coverage benefits because, under the terms of the Policy, he is an "insured" and the nonparty driver's vehicle is an "underinsured motor vehicle."  (*Id*. at 7, ¶¶ 19–20).

### C.   Plaintiff's UIM Claim

On January 8, 2019, Plaintiff submitted to Farmers Insurance a notice to pursue a

---

[3] Unless otherwise noted, these facts are taken from Plaintiff's FAC (Doc. 1-3 at 4–25).  The Court will assume the FAC's factual allegations are true, as it must in evaluating a motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[4] The nonparty driver's policy provided for "bodily injury liability coverage in the amount of $100,000 per person, subject to an aggregate limit of $300,000 per collision."  (Doc. 1-3 at 6).

UIM claim in accordance with A.R.S. § 12-555.[5]  (Doc. 17-1 at 11–21) (the "January 2019 Notice").  Plaintiff sought UIM coverage benefits on all vehicles insured on the Policy. (Docs. 1-3 at 8, ¶ 21.)  In response to Plaintiff's UIM claim, Farmers Insurance paid Plaintiff $500,000 under one of the four vehicles insured by the Policy.  (Docs. 1-3, 8 ¶ 25; 10 at 3).  Farmers Insurance represents it assumed this payment resolved Plaintiff's UIM claim.  (Docs. 10 at 3; 17 at 7).

Over three years later, on July 5, 2022, Plaintiff sent a letter regarding his initial January 2019 Notice that demanded "stacked" UIM coverage because the Policy insures four vehicles.  (Doc. 1-3 at 12 ¶ 45, 67) (the "July 2022 Demand").  In other words, Plaintiff sought an additional $1,500,000—$500,000 for each of the three other insured vehicles under the Policy.  (Doc. 10 at 3).  Farmers Insurance responded with a letter on July 21, 2022, asking for more information on Plaintiff's UIM claim.  (Doc. 1-3 at 67–69) (the "July 2022 Letter").  Farmers Insurance relied on the Policy's "Limit of Liability" clause when handling Plaintiff's request for additional coverage, which stated the following:

> A.    The limit of liability shown in the Declarations for "each person" is the most we will pay for all damages, including prejudgment and post-judgment interest, due to [bodily injury] to any one person as a result of any one accident. This includes all damages sustained by any other person as a result of that [bodily injury]. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" is the most we will pay for all damages, including prejudgment and post-judgment interest, arising out of [bodily injury] sustained by two or more persons resulting from any one accident.
>
> If a single limit is shown in the Declarations for "each accident" this is the most we will pay for any one accident, including prejudgment and post-judgment interest.
>
> The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.

---

[5] A.R.S. § 12-555(B) sets forth the circumstances for when an insurer is liable for UIM and UM claims.

This is the most we will pay regardless of the number of:

>1. insureds;
>
>2. claims made;
>
>3. vehicles shown in the Declarations;
>
>4. premiums shown in the Declarations; or
>
>5. vehicles involved in the accident.

(*Id*. at 9 ¶ 33, 38–39).  Under this language, Farmers Insurance ultimately concluded that Plaintiff was not entitled to additional UIM coverage under the remaining three vehicles. (*Id*. at 9 ¶¶ 32–33, 12 ¶ 46).

### D.    Procedural History

On September 28, 2022, Plaintiff filed a class action suit in Arizona Superior Court and Farmers Insurance subsequently removed the action to this Court. (*See* Doc. 1); *see also Creasman v. Farmers Cas. Ins. Co. f/k/a Metropolitan Cas. Ins. Co.*, No. CV2022-012824 (Ariz. Super. Ct. Sept. 28, 2022).  Plaintiff sought to represent two putative classes of insured that were similarly denied coverage under Farmers Insurance's UM and UIM policies.  (Doc. 1-3 at 15–17).  Plaintiff brought the following three claims in the FAC:

>(1)    Farmers Insurance committed breach of contract when it refused to pay stacked UIM benefits under its policies.  (Doc. 1-3 at 13 ¶ 51–52) (Plaintiff's breach of contract claim);
>
>(2)    Farmers Insurance breached the covenant of good faith and fair dealing when it failed to conduct a reasonable investigation as to whether stacked UIM coverage is available under its policies. (*Id*. at 13–14 ¶ 53–63) (Plaintiff's bad faith claim);
>
>(3)    Plaintiff is entitled to declaratory judgment stating, "he is entitled to Stacked [UIM] Coverage on the Farmers policy."  (*Id*. at 13 ¶ 49). (Plaintiff's claim for declaratory relief).

Plaintiff also claimed punitive damages.  (*Id*. at 15 ¶¶ 64–65).  Farmers Insurance filed a Motion to Dismiss the FAC in its entirety.  (*See* Doc. 10).

Farmers Insurance later filed an Expedited Motion to Stay Proceedings (Doc. 16) pending a decision from the Arizona Supreme Court on the following certified questions:

> (1)   Does A.R.S. § 20-259.01 mandate that a single policy insuring multiple vehicles provides different [UIM] coverages for each vehicle, or a single UIM coverage that applies to multiple vehicles?
>
> (2)   Does A.R.S. § 20-259.01(B) bar an insured from receiving UIM coverage from the policy in an amount greater than the bodily injury liability limits of the policy?

(the "Certified Questions").  *Franklin v. CSAA Gen. Ins. Co.*, No. 2:22-cv-00540-JJT (D. Ariz. Nov. 2, 2022), at Doc. 47 (certifying questions); *see also Franklin v. CSAA Gen. Ins. Co.*, CV-22-0266-CQ (Ariz.).  The Court found good cause to stay proceedings in the present matter because the Certified Questions relate to the FAC and resolution of those Questions could narrow the issues raised in Plaintiff's claims.  (Doc. 16 at 3).  However, the Court agreed with Plaintiff that some of the issues in Farmers Insurance's Motion to Dismiss did not turn on the Arizona Supreme Court's resolution of the stacking issue under A.R.S. § 20-259.01.  The Court now considers Farmers Insurance's Motion.

## II.   Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6)[6] challenges the legal sufficiency of a complaint.  *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  A complaint need not contain detailed factual allegations to avoid a Rule 12(b)(6) dismissal; it simply must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A complaint has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads

---

[6] Except where otherwise noted, all Rule references are to the Federal Rules of Civil Procedure.

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citation omitted).

Ordinarily, a court may look only at the face of the complaint to rule on a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). If a district court considers evidence outside the pleadings when ruling on a Rule 12(b)(6) motion, it must normally convert the motion into a Rule 56 motion for summary judgment and give the nonmoving party an opportunity to respond. Fed. R. Civ. P. (12)(d); *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003); *S.F. Patrol Special Police Officers v. City & Cnty. of San Francisco*, 13 F. App'x 670, 675 (9th Cir. 2001). However, there are two exceptions to the above conversion requirement. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). First, a court may take judicial notice of matters of public record under Federal Rule of Evidence 201. *See S.F. Patrol Special Police Officers*, 13 F. App'x at 675. Second, a court may consider "material that the plaintiff properly submitted as part of the complaint or, even if not physically attached to the complaint, material that is not contended to be inauthentic and that is necessarily relied upon by the plaintiff's complaint." *Id*. The latter scenario is referred to as the "incorporation by reference" doctrine in the Ninth Circuit. *See e.g., Van Buskirk*, 284 F.3d at 980.

When ruling on a motion to dismiss, the court accepts all factual allegations in the complaint as true and views the pleadings in light most favorable to the nonmoving party. *See Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). That rule does not apply, however, to legal conclusions. *Iqbal*, 556 U.S. at 678. A complaint that provides "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor will a complaint suffice if it presents nothing more than "naked assertions" without "further factual enhancement." *Id.* at 557.

## III.    The Motion to Dismiss (Doc. 10)

Farmers Insurance moves to dismiss the FAC in its entirety. It argues Plaintiff's breach of contract claim is barred by the statute of limitations under A.R.S. § 12-555(C)(2). Farmers Insurance further contends Plaintiff fails to state a claim for bad faith under

1    Arizona law.  Last, it maintains Plaintiff lacks standing to pursue declaratory relief on

2    behalf of himself and of the putative class.

3         Plaintiff opposes, arguing Farmers Insurance cannot assert a statute of limitation

4    defense either because it did not comply with the notice requirement under A.R.S. §§ 12-

5    555(C)(1) or because the statute of limitations was tolled.  He further contends the FAC

6    properly states a claim for bad faith and declaratory relief.  Plaintiff requests leave to amend

7    the FAC should the Court find otherwise.

8         The Court will address Plaintiff claims for breach of contract, bad faith, and

9    declaratory relief in turn.

10        **A.    Plaintiff's Breach of Contract Claim for UIM Benefits**

11        The parties dispute how the three-year statute of limitations under A.R.S. § 12-555

12   applies to Plaintiff's breach of contract claim.   A.R.S. § 12-555 sets forth various

13   procedural requirements for an insurer to be liable for UM and UIM coverage benefits.

14   Subsection (B)[7] is a notice provision with respect to the claimant:

15
16        An insurer is not liable for underinsured motorist coverage benefits unless
         the person making the claim gives written notice to the insurer of the person's
17        intent to pursue the claim against the underinsured motorist portion of a
         motor vehicle policy *within three years after the date of the accident* that
18        caused the bodily injury and the person has made a claim with the tortfeasor's
         insurer . . . .
19

20   A.R.S.  §  12-555(B) (emphasis added) (the "claimant notice provision").   In turn,

21   Subsection (C)(1) is a notice provision with respect to the insurer:

22
         If settlement of an uninsured or underinsured motorist claim is not reached:
23        The insurer shall provide written notice to the person . . . *within two years
         after receiving the written notice* prescribed in subsection A or B of this
24        section, that the person must request arbitration or file suit pursuant to the
         terms of the insurance contract within three years after providing the written
25        notice prescribed in subsection A or B of this section . . . .
26

27   *Id*. § 12-555(C)(1) (emphasis added) (the "insurer notice provision").  Subsection (C)(2)

28
     _____
     [7] Except where otherwise noted, all Subsection references are to A.R.S. § 12-555.

1    provides the operative statute of limitation, which requires claimants to "request arbitration

2    or file suit pursuant to the terms of the insurance contract *within three years after providing*

3    *the written notice* prescribed in subsection . . . B of this section" in order for the insurer to

4    be liable for coverage benefits.  *Id*. § 12-555(C)(2) (emphasis added) (the "three-year

5    statute of limitations").

6        The parties agree that Plaintiff's January 2019 Notice[8] sufficed the claimant notice

7    provision because he submitted it within three-years after the August 2016 accident.

8    *See id*. § 12-555(B).  Thus, according to the three-year statute of limitations, Plaintiff was

9    required to bring suit by January 2022.  *See id*. § 12-555(C)(2).  He did not do so until

10   September 28, 2022.  Farmers Insurance therefore argues it cannot be liable for Plaintiff's

11   breach of contract claim on UIM coverage grounds.  (Doc. 10 at 5).

12       However, the FAC states that Farmers Insurance did not comply with the insurer

13   notice provision.  *See* A.R.S. § 12-555(C)(1).  So, Plaintiff posits Famers Insurance is

14   precluded from asserting a statute of limitation defense because: (1) an insurer must comply

15   with the insurer notice provision in order to trigger the three-year statute of limitations; (2)

16   the insurer notice provision acts as a statutory tolling provision; or (3) the doctrine of

17   equitable tolling applies.  The Court will first set forth the applicable standard of review

18   for interpreting state law matters before addressing each of Plaintiff's arguments.

19              **1.    Legal Standards for Interpreting State Law**

20       When addressing matters of state law interpretation, federal courts must "start by

21   looking to the state's highest court to see if it has opined on the issue."  *Slidewaters LLC*

22   *v. Wash. State Dep't of Labor & Indus.*, 4 F.4th 747, 755 (9th Cir. 2021) (citing *Giles v.*

23   *Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007)).  The Arizona Supreme

24   Court has not directly addressed the statute of limitations under A.R.S. § 12-555.  Thus,

25

26   ───────────────
     [8] The Court will consider the January 2019 Notice attached to Farmers Insurance's Motion

27   to Dismiss (Doc. 17-1 at 11–21) under the incorporation by reference doctrine. *See S.F.*
     *Patrol Special Police Officers*, 13 F. App'x at 675; *Van Buskirk*, 284 F.3d at 980; *see also,*
     *e.g.*, *Ward v. Pima Animal Care Ctr. Officer Hinte*, 2021 WL 4478401, at *4 (D. Ariz.

28   Sept. 30, 2021).

this Court must "predict" how Arizona Supreme Court would resolve the issue.[9]  *Giles*, 494 F.3d at 872 (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986)).

Federal courts then turn to the text of the statute itself while applying the state's principles of statutory interpretation.  *Slidewaters LLC*, 4 F.4th at 755 (citing *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1209 (9th Cir. 2010)).  The Arizona Supreme Court instructs that "[i]f the language [of the statute] is clear, the court must 'apply it without resorting to other methods of statutory interpretation,' unless application of the plain meaning would lead to impossible or absurd results." *N. Valley Emergency Specialists, L.L.C. v. Santana*, 93 P.3d 501, 503 (Ariz. 2004) (quoting *Bilke v. State*, 80 P.3d 269, 271 (Ariz. 2003)); *see also  State v. Burbey*, 403 P.3d 145, 147 (Ariz. 2017).  "When an ambiguity or contradiction exists, however, [the court] attempt[s] to determine legislative intent by interpreting the statutory scheme as a whole and consider 'the statute's context, subject matter, historical background, effects and consequences, and spirit and purpose.'" *UNUM Life Ins. Co. of Am. v. Craig*, 26 P.3d 510, 513 (Ariz. 2001) (quoting *Aros v. Beneficial Ariz., Inc.,* 977 P.2d 784, 788 (Ariz. 1999)).  The Court must adhere to these principles when interpreting A.R.S. § 12-555.

## 2.  Whether Subsection (C)(1) Triggers the Statute of Limitations under Subsection (C)(2)

Plaintiff suggests the three-year statute of limitations under Subsection (C)(2) was not yet triggered because Farmers Insurance failed to comply with the insurer notice provision under Subsection (C)(1).  He interprets the insurer notice provision's use of the word "shall" to create a mandatory notice obligation on part of Farmers Insurance that functions as a predicate to the three-year statute of limitations.  (Doc. 13 at 6–7 citing A.R.S. § 12-555(C)(1) ("If settlement of an uninsured or underinsured motorist claim is not reached: The insurer *shall* provide written notice to the person . . . .") (emphasis

---

[9] To answer this inquiry, courts are directed to "look[] for 'guidance' to decisions by intermediate appellate courts of the state and by courts in other jurisdictions." *Giles*, 494 F.3d at 872 (quoting *Dimidowich v. Bell & Howell*, 803 F.2d 1473, 1482 (9th Cir. 1986)).

1   added)).  Farmers Insurance opposes, arguing the statutory period is expressly tied to the

2   claimant's notice provision under Subsection (B), not the insurer notice provision.

3   (Doc. 10 at 5).  It characterizes the insurer notice provision as "prophylactic" with no

4   impact on the three-year statute of limitations.  (*Id*. at 6).

5           It is questionable whether Farmers Insurance was bound by the insured notice

6   provision at all.  When taking the allegations in the FAC as true, Farmers Insurance paid

7   Plaintiff $500,000.00 in response to Plaintiff's January 2019 Notice, which presumably

8   settled Plaintiff's UIM claim.  (Docs. 1-3, 8 ¶ 25; 10 at 3).  Plaintiff puts nothing before

9   the Court showing the claim was not settled until he sought more money in his July 2022

10  Demand.  In other words, Plaintiff did not put Farmers Insurance on notice that he rejected

11  its claim payment until three years later, which runs afoul of both the claimant notice

12  provision, *see* A.R.S. § 12-555(B) (requiring notice within three years after the date of the

13  accident that caused the bodily injury), and the three-year statute of limitation. *See id*. §

14  12-555 (C)(2).

15          Even assuming Farmers Insurance *is* bound by the insured notice provision, Farmers

16  Insurance's interpretation of A.R.S. § 12-555 is more persuasive because Subsection (C)(2)

17  clearly tethers the three-year period for a claimant to bring suit to the date the claimant

18  provides the insurer with notice under Subsection (B).  *See id*. § 12-555(C)(2) ("A person

19  shall . . . file suit pursuant to the terms of the insurance contract within three years after

20  providing the written notice prescribed in subsection . . . B of this section.").  And the

21  Arizona Supreme Court has emphasized that "[a] statute's language is 'the best and most

22  reliable index of a statute's meaning.'" *State v. Williams*, 854 P.2d 131, 133 (Ariz. 1993)

23  (quoting *Janson v. Christensen*, 808 P.2d 1222, 1223 (Ariz. 1991)).  If the state legislature

24  wanted to link the three-year period to the date the insurer provides notice under Subsection

25  (C)(1) it "could easily have done so."  *Lewis v. Ariz. Dep't of Econ. Sec.*, 925 P.2d 751,

26  756 (Ariz. Ct. App. 1996) (citing *State v. Korzep*, 799 P.2d 831, 835 (Ariz. 1990)); *see also*

27  *U.S. Parking Sys. v. City of Phoenix*, 772 P.2d 33, 34 (Ariz. Ct. App. 1989) ("Where a term

28  is used in one provision of a statute and omitted from another, that term should not be read

into the section where it is omitted.").

Furthermore, if an insured failed to ever give notice under Subsection (C)(1), the period for a claimant to bring a suit would never expire.  To interpret A.R.S. § 12-555 in such a manner "would lead to impossible . . . results."  *N. Valley Emergency Specialists*, 93 P.3d at 503 (quoting *Bilke*, 80 P.3d at 271)).  *Span v. Maricopa Cnty. Treasurer*, an unpublished opinion, demonstrates this problem.  2014 WL 1233463 (Ariz. Ct. App. Mar. 25, 2014).  There, the Arizona state court considered whether a notice provision functioned as a prerequisite to the ten-year statutory period for expiration of a tax lien under A.R.S. § 42–18201.  The state court found it did not because "nothing in the statute indicate[d] that the expiration date hinge[d] on completion of the notice requirement."  *Id.* at *4.  The state court further emphasized that if the responsible party "failed to ever give such notices, the liens would never expire."  *Id.*  Plaintiff's interpretation of A.R.S. § 12-555 mirrors this same dilemma.

In sum, A.R.S. § 12-555(C)(2) clearly ties the three-year statute of limitations in this case to Plaintiff's January 2019 Notice under A.R.S. § 12-555(B).  Plaintiff was required to file suit by January 2022, but did not do so until September 28, 2022.  Thus, Plaintiff's breach of contract claim for UIM benefits is time-barred.

### 3. Whether A.R.S. § 12-555(C)(1) functions as a statutory tolling provision

Plaintiff alternatively suggests that Farmers Insurance's failure to comply with the insurer notice requirement under Subsection (C)(1) tolled the January 2022 statute of limitations under Subsection (C)(2).  Plaintiff cites to the Arizona Senate Fact Sheet for A.R.S. § 12-555 (the "Fact Sheet") to argue the legislature intended the insurer notice provision to operate as a statutory tolling provision.  (Docs. 13 at 6; 13-2).  Relevant in part, the Fact Sheet states the following:

> [Subsection (C)(1)] requires the insurer to provide written notice to the [claimant] . . . within two years after receiving written notice of the person's intent to pursue a claim informing the person of their responsibilities *for the insurer to be exempt from liability* for the claims if an uninsured or

1

2

underinsured motorist claim is not reached.

3

(Doc. 13-1 at 2) (emphasis added); *see also* Ariz. S. Fact Sheet, 2006 Reg. Sess. H.B. 2164

4

(March 24, 2006).[10]  Plaintiff reasons the Fact Sheet requires Farmers Insurance to comply

5

with insurer notice requirement before a claimant can rely on the three-year statute of

6

limitations.  (Doc. 13 at 6–7).

7

But because the text of A.R.S. § 12-555 is clear, *see supra* Section III.A(2), there is

8

no need to consider secondary interpretation principles such as legislative history.  *See*

9

*James v. City of Peoria*, 513 P.3d 277, 281 (2022) (citing *Burbey*, 403 P.3d at 147)).

10

Neither the express language of A.R.S. § 12-555 nor the Fact Sheet designates the insurer

11

notice requirements with a tolling mechanism for an otherwise clearly stated three-year

12

statute of limitations.  Plaintiff places emphasis on the Fact Sheet's clause "for the insurer

13

to be exempt from liability" as evidence that the legislature intended the insurer notice

14

requirement to function as a prerequisite before a claimant can rely on the three-year statute

15

of limitations.  (Doc. 13 at 7).  But this argument is speculative because the Fact Sheet does

16

not identify with particularity what type of liability from which the insured would be

17

exempt.  Indeed, under this interpretation, it would remain true that an insurer may still be

18

subject to administrative consequences that are not before the Court should the insurer fail

19

to provide a claimant with notice under Subsection (C)(1).

20

Moreover, Plaintiff cites *Montano v. Browning* for the proposition that statutory

21

limitation defenses are generally disfavored. (Doc. 13 at 4 citing 48 P.3d 494, 496 (Ariz.

22

Ct. App. 2002)).  But *Montano* also stated that "claims that are clearly brought outside the

23

relevant limitations period are conclusively barred."  48 P.3d at 496.  The Court's

24

assessment of the FAC is consistent with this statement.  Even more, the statute at issue in

25

*Montano*, as well as the statutes cited by analogy therein, all expressly provided for tolling

26

circumstances.[11]  A.R.S. § 12-555 does not expressly identify any tolling circumstances,

27

---

[10] The Court takes judicial notice of the Fact Sheet, which Plaintiff attached to his
Response, as a matter of public record.  *Lee*, 250 F.3d at 688–89.

28

[11] *See Montano*, 48 P.3d at 496 (examining A.R.S. § 12–502; A.R.S. § 12–501 (tolling the
limitations period during a defendant's absence from state); and A.R.S. § 12–528 (tolling
the limitations period in actions for recovery of real property during the minority or insanity

1   and the Court will not read one into the statutory text.  See *Home Builders Ass'n of Cent.*

2   *Ariz. v. City of Scottsdale*, 930 P.2d 993, 997 (Ariz. 1997); *Roberts v. State*, 512 P.3d 1007,

3   1014 (Ariz. 2022).

4                  **4.      Whether equitable tolling applies**

5          Plaintiff last argues equitable tolling should apply.   He represents Farmers

6   Insurance's July 2022 Letter (in response to Plaintiff's July 2022 Demand) "sparked hope

7   that additional benefits might be paid" and consequently tolled the statute of limitations.

8   (Doc. 1-3 at 9 ¶ 28–30 citing *Abney v. Liberty Mut. Ins. Co.*, 2012 WL 5547441, at *3

9   (Ariz. Ct. App. Feb. 21, 2012)).   Plaintiff also argues Farmers Insurance violated its

10  obligation under the Arizona Administrative Code[12] to inform Plaintiff of his rights under

11  his Policy when it concealed from him that additional stacked UIM benefits were available

12  as ruled in *Heaton v. Metro. Grp. Prop. & Cas. Ins. Co.*, 2021 WL 6805629 (D. Ariz. Oct.

13  19, 2021) (hereinafter *Heaton*).  (Doc. 13 at 10).[13]

14         Farmers  Insurance  contends  Plaintiff's  reasoning  is  flawed  because  it  was

15  "impossible for the [July 2022] letter to have caused [Plaintiff] not to file suit within the

16  limitations period[,]" which presumably ended on January 8, 2022.  (Doc. 10 at 6).  It

17  further argues "it was under no obligation, statutory or otherwise, to inform [Plaintiff]

18  about an unpublished, non-precedential decision that does not establish Arizona law."

19  (Doc. 17 at 7).

20         Arizona courts have recognized exceptions to the statute of limitation defense to

21  prevent a defendant from using it "as a shield for inequity."  *Nolde v. Frankie*, 964 P.2d

22  477, 481 (Ariz. 1998) (*en banc*).  A plaintiff must establish the following four elements in

23  order for equitable estoppel to apply: (1) "the plaintiff must identify specific promises,

24  of a party)).

---

25  [12] Section 20-6-801(D)(1) of the Arizona Administrative Code provides that "[n]o insurer
    shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other
26  provisions of an insurance policy or insurance contract under which a claim is presented."
27  Ariz. Admin. Code § 20-6-801(D)(1).

    [13] Farmers Insurance was the named defendant in *Heaton* and at issue was the same Limit
28  of Liability clause in Plaintiff's Policy.  (*Compare* Doc. 1-3 at 9 ¶ 33 *with Heaton*, 2021
    WL 6805629, at *1–2); *see also supra* Section III.B(4).

threats or inducements by the defendant that prevented the plaintiff from filing suit"; (2) "the defendant's promises, threats or representations actually induced the plaintiff to forbear filing suit"; (3) "the defendant's conduct *reasonably* caused the plaintiff to forbear filing a timely action"; and (4) "the plaintiff must [have] file[d] suit within a reasonable time after termination of the conduct warranting estoppel." *Id*. A "defendant whose affirmative acts of fraud or concealment have misled a person from either recognizing a legal wrong or seeking timely legal redress may not be entitled to assert the protection of a statute of limitations." *Porter v. Spader*, 239 P.3d 743, 747 (Ariz. Ct. App. 2010).

Neither the July 2022 Letter nor Plaintiff's unawareness of *Heaton* justifies equitable tolling. Plaintiff cannot rely on Farmers Insurance's July 2022 Letter as a "specific promise" under factor one because the Letter did not in fact prevent Plaintiff from timely filing suit. The statute of limitations would have naturally expired in January 2022, so the July 2022 Letter had no impact on Plaintiff's ability to file a timely action. *See Monts v. Anderson*, 2019 WL 4144394, at *5 (D. Ariz. Apr. 2, 2019), *report and recommendation adopted*, 2019 WL 4141064 (D. Ariz. Aug. 30, 2019) ("equitable tolling based on a defendant's misconduct is only warranted when the alleged unfair circumstance caused the plaintiff to actually miss the filing deadline.") (collecting cases).

Plaintiff cannot rely on Farmers Insurance's lack of initiative to alert him to *Heaton* as an "affirmative act of fraud or concealment" under factor one for similar reasons. At the outset, Plaintiff cannot advance these new allegations for the first time in his Response without initially alleging it in the FAC. *See Van Buskirk*, 284 F.3d at 980 (explaining a "court may look only at the face of the complaint to decide a motion to dismiss"). Irrespective of this procedural deficiency, *Heaton* was issued after Farmers Insurance paid Plaintiff $500,000 to settle the UIM claim brought in his January 2019 Notice, so it was impossible for Farmers Insurance to inform Plaintiff of the ruling at that time. Although *Heaton* was in place when Plaintiff submitted his July 2022 Demand, the statute of limitations would have otherwise expired in January 2022. Plaintiff's knowledge of *Heaton* thus had no bearing on his ability to file suit, which is a necessary causation factor

under the doctrine of equitable tolling.  *See Nolde* 964 P.2d at 481.  Plaintiff may be able to highlight Farmers Insurance's conduct in light of *Heaton* in his bad faith claim, *see supra* Section III.B(4),  but such conduct is irrelevant in the context of the equitable tolling. Overall, Plaintiff has not met the four *Nolde* factors to invoke equitable tolling because has not identified any action (or lack thereof) on the part of Farmers Insurance that prevented him from timely filing suit.

To summarize, A.R.S. § 12-555 required Plaintiff to file suit for his UIM claim within three-years after submitting his January 2019 Notice to Farmers Insurance under Subsection (B)—that is, by January 2022.  Plaintiff did not file suit until September 28, 2022, and so his UIM breach of contract claim for denial of UIM benefits is time barred under Subsection (C)(2).  The insured notice provision under Subsection (C)(1) did not toll three-year limitations and equitable tolling does not apply.  Furthermore, under this factual timeline, it is impossible for Plaintiff to amend his complaint to bring his suit within the statute of limitations.

The Court will therefore dismiss with prejudice Plaintiff's breach of contract claim under Rule 12(b)(6).

### B.    Plaintiff's Bad Faith Claim

Farmers Insurance argues Plaintiff's bad faith claim fails as a matter of law because it cannot survive in absence of his breach of contract claim and Plaintiff cannot rely on nonbinding authority to establish evidence of bad faith.  (Doc. 10 at 8–10).  Overall, Farmers Insurance argues Plaintiff advances conclusory allegations and has not pled enough factual details under Rule 12(b)(6).  Plaintiff opposes, arguing Farmers Insurance does not cite any authority to support its claim that only binding authority can establish an insurer's coverage decision was unreasonable.  (Doc. 13 at 15).  Plaintiff nonetheless concedes there are additional allegations he can include in an amended complaint that specifically show how Farmers Insurance put its interests ahead of its insured when handling UIM claims.[14]  (*Id*. at 17).

---

[14] Plaintiff represents that during the meet and confer ahead of Farmers Insurance's Motion to Dismiss, Plaintiff "offered to amend his [FAC] to allege more specific factual allegations

1    The Court will first clarify the difference between a breach of contract claim and a

2    bad faith claim in insurance actions before turning to the merits of Farmers Insurance's

3    arguments.

### 1.    The Tort of Bad Faith in Insurance Actions

5    Plaintiff's second claim is that Farmers Insurance committed bad faith when it failed

6    to adequately investigate whether he was entitled to stacked UIM coverage under the

7    Policy. (Doc. 1-3 at 13–14 ¶ 53–63). The Arizona Supreme Court held "there is a legal

8    duty implied in an insurance contract that the insurance company must act in good faith in

9    dealing with its insured on a claim, and a violation of that duty of good faith is a

10   tort." *Noble v. Nat. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981) (*en banc*). Thus, while

11   a breach of contract claim arises under contract law, a bad faith claim arises under tort law.

12   "The tort of bad faith only arises when an insurance company intentionally denies or fails

13   to process or pay a claim without a reasonable basis for such action." *Lasma Corp. v.*

14   *Monarch Ins. Co. of Ohio*, 764 P.2d 1118, 1122 (Ariz. 1988) (*en banc*).

15   To establish a bad faith claim, "a[n insured] must show the absence of a reasonable

16   basis for denying benefits of the policy and the [insurer's] knowledge or reckless disregard

17   of the lack of a reasonable basis for denying the claim." *Deese v. State Farm Mut. Auto.*

18   *Ins. Co.*, 838 P.2d 1265, 1267–68 (Ariz. 1992) (*en banc*) (quoting *Noble*, 624 P.2d at 866).

19   This test turns on whether the insurer acted reasonable under the circumstances and treated

20   its insureds fairly in evaluating their claims. *Id*. at 1268 (citations omitted). "Although the

21   initial inquiry consists of an objective finding, i.e., whether the insurer acted unreasonably,

22   the second inquiry focuses on the insurer's conduct and whether the insurer *knew* that its

23   conduct was unreasonable or acted with such reckless disregard that such knowledge could

24   be imputed to it." *Id*. (citing *Rawlings v. Apodaca*, 726 P.2d 565, 573 (Ariz. 1986) (*en*

25   *banc*)). Mere negligence is insufficient to show bad faith. *Id*.

26   A court need not find that an insurer breached an express covenant of an insurance

27   contract as a perquisite to finding the insurer handled an insured's claim in bad faith.

28

supporting his claims[,]" but Farmers Insurance refused. (Doc. 13 at 15).

*Rawlings*, 726 P.2d at 573 (holding that although Farmers Insurance performed its express covenants, it "breached its duty to play fairly with its insureds and to give their legitimate interests equal consideration"). An insurer may pay the full amount of insurance benefits due under the contract and still breach the implied covenant of good faith and fair dealing "when its conduct damages the very security which the insured sought to gain by buying insurance." *Id*. (citing *Noble*, 624 P.2d at 868).

### 2. Plaintiff Can Bring a Bad Faith Claim Independently of His Breach of Contract Claim

Farmers Insurance first argues Plaintiff's bad faith claim must fail because it is dependent on his time-barred breach of contract claim. It represents the FAC "does not allege any supposed bad faith conduct by Farmers beyond failing to pay stacked coverage." (Doc. 17 at 10). To support its theory, Farmers Insurance cites *Manterola v. Farmers Insurance Exchange*, which stated "a bad faith claim based solely on a carrier's denial of coverage will fail on the merits if a final determination of noncoverage ultimately is made." *Id*. (citing 30 P.3d 639, 646 (Ariz. Ct. App. 2002)).[15] Farmers Insurance thus reasons that Plaintiff's bad faith claim cannot survive in absence of his breach of contract claim. (*Id*.)

It is true Plaintiff premises his bad faith claim, in part, on Farmers Insurance denying him stacked UIM coverage benefits. (Doc. 1-3 at 14 ¶ 60). But Plaintiff further relies on other aspects of Farmers Insurance's conduct, including its "failure to adequately investigate coverage" and "failure to treat [Plaintiff] with equal consideration." (Doc. 1-3 at 14 ¶¶ 56–57). These claims can be brought separately from Plaintiff's breach of contract claim under Arizona tort law because "the implied covenant of good faith and fair dealing can be breached even though the company performs its express covenants under the insurance contract." *Rawlings*, 726 P.2d at 573. To hold otherwise would plainly contravene Arizona Supreme Court precedent. *See Deese*, 838 P.2d at 1267–68; *Rawlings*, 726 P.2d at 573; *Noble*, 624 P.2d at 868.

---

[15] Famers insurance also relies on *Niagara Bottling, LLC v. Zurich Am. Ins. Co.*, 2019 WL 6729756 (C.D. Cal. Oct. 5, 2019). (*See* Doc. 10 at 9). The Court will not consider this non-binding authority because it interprets California state law.

Furthermore, the Court is unconvinced that *Manterola* controls.  There, the insurer defended an insured and then contested coverage in a separate declaratory relief action while the insurer obtained a stipulated judgment against the insured.  *Manterola*, 30 P.3d at 641.  The Arizona state court considered the narrow issue of "when, in that scenario, does a bad faith claim against an insurer accrue, for statute of limitations purposes: when a judgment in the underlying personal injury action against the insured becomes final, or when a final determination of coverage is later made in the [declaratory relief action]?"  *Id*.  None of these facts or issues of law exist in the present matter.

### 3.    Whether *Heaton* is Binding has no Bearing on the Sufficiency of Plaintiff's Bad Faith Allegations

Farmers Insurance next argues Plaintiff cannot rely on *Heaton* to state a claim for bad faith.  As mentioned, *Heaton* substantially relates to the present matter because Farmers Insurance was also the named defendant and the same Limit of Liability clause was at issue.  (*Compare* Doc. 1-3 at 9 ¶ 33 *with Heaton*, 2021 WL 6805629, at *1–2).  *Heaton* held the plaintiff insureds could stack their available UIM coverages because Farmers Insurance "did not adhere to the requirements of A.R.S. [§] 20-259.01(H) to prevent stacking."  *Heaton*, 2021 WL 6805629, at *8.  *Heaton* is an unpublished 2021 decision from the District Court of Arizona and was thus issued at the time Plaintiff sought additional UIM coverage benefits in his July 2022 Demand.

Farmers Insurance argues Plaintiff cannot use *Heaton* to show Farmers Insurance knew it was obligated to provide stacked UIM coverage benefits to Plaintiff because *Heaton* is non-binding authority.  (Doc. 10 at 13).  Farmers Insurance does not cite any legal authority for this proposition.[16]  Indeed, Plaintiff's bad faith claim necessarily places into issue Farmers Insurance's conduct in light of its knowledge of *Heaton*.  For example,

---

[16] Farmers Insurance cites to cases that either characterize the impact of federal court decisions on state courts or distinguish binding from non-binding precedent.  (Doc. 10 at 13 citing *Luu v. Newrez*, LLC, 510 P.3d 496, 501 (Ariz. Ct. App. 2022); *McMahon v. Astrue*, 2009 WL 1066133, at *2 (D. Ariz. Apr. 21, 2009); *Hart v. Massanari*, 266 F.3d 1155, 1180 (9th Cir. 2001)).  None of these cases address whether knowledge of non-binding authority can be used to allege bad faith conduct on part of an insured.

Farmers Insurance states that "even if [it] knew about *Heaton*. . . there is no authority []
imposing on an insurer the obligation to dig through long-closed claims files to identify
claimants who might be impacted by the issuance of [*Heaton*,] an unpublished judicial
decision[,] and then notify those potentially-impacted claimants about the decision." (Doc.
17 at 7).  Plaintiff further claimed that "[e]ven assuming [] Farmers [Insurance] reasonably
believed stacking was prohibited by the policy, any such belief was unreasonable after
October 2021" when *Heaton* was issued.  (Doc. 13 at 10).

A bad faith claim is a question of reasonableness under the circumstances.  *Deese*,
838 P.2d at 1268.  So, the parties' arguments above go to the merits of Plaintiff's bad faith
claim and are more appropriately considered on a motion for summary judgment, not a
motion to dismiss.  *See e.g.*, *Lukes v. Am. Fam. Mut. Ins. Co.*, 455 F. Supp. 2d 1010, 1016
(D. Ariz. 2006) ("Under Arizona law, if an insurer's conduct is reasonable or fairly
debatable, there is no liability for bad faith") (considering a  motion for summary
judgment).  Rule 12(b)(6) only requires Plaintiff to allege "enough facts to state a claim to
relief that is plausible on its face." *Twombly*, 550 U.S., at 570; *see also Lukes*, 455 F. Supp.
2d at 1016 ("In order to support a claim of bad faith, Arizona law requires the Plaintiffs to
set forth facts which indicate that the [d]efendant lacked a reasonable basis for denying the
[p]laintiffs' claims.") (citing *Noble*, 624 P.2d at 867) (considering a motion to dismiss)).
Farmers Insurance has cited no authority that prevents Plaintiff from using Farmers
Insurance's knowledge of *Heaton* to allege bad faith conduct.

### 4.      Plaintiff's Bad Faith Allegations are Insufficient

Although Plaintiff may (a) bring a bad faith claim independently of his breach of
contract claim and (b) rely on *Heaton* to allege bad faith, the Court nonetheless agrees with
Farmers Insurance that Plaintiff has not pled sufficient facts to survive a motion to dismiss
under Rule 12(b)(6).  One the one hand, vague claims such as Farmers Insurance "fail[ed]
to adequately investigate coverage" and "fail[ed] to treat [Plaintiff] with equal
consideration" are devoid of any factual content.  (*See* Doc. 1-3 at 14 ¶¶ 56–57).  These
"labels and conclusions," without more, are insufficient as they present nothing but "naked

assertions" without further factual enhancement.  *Twombly*, 550 U.S. at 555, 557.  One the other hand, the FAC only nods to *Heaton* in passing.  (Doc. 1-3 at 10 ¶ 34) (citing to *Heaton* for the proposition that "[t]he Limit of Liability language does not preclude Stacked Underinsured Motorist Coverage").

Plaintiff, however, has identified additional allegations beyond the scope of the FAC that show with particularity how Farmers Insurance put its interests ahead of its insured when handling UIM claims.  (Doc. 13 at 15–17).  In his Response, Plaintiff also explained his intent to show bad faith by emphasizing Farmers Insurance's knowledge and conduct when handling his UIM claim in light of *Heaton*.   (*Id.* at 16–17).   These points also appeared in Plaintiff's equitable tolling argument.[17]   The Court will therefore allow Plaintiff to amend his bad faith claim.  *C.f. Rabang v. INS*, 35 F.3d 1449, 1451 (9th Cir. 1994) ("A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.") (citing *Buckey v. Cnty. of Los Angeles*, 968 F.2d 791, 793–94 (9th Cir.1992))

The Court will therefore dismiss Plaintiff's bad faith claim without prejudice under Rule 12(b)(6) and permit him leave to amend and cure the deficiencies identified above. *See* Fed. R. Civ. P. 15(a) ("The court should freely give leave [to amend] when justice so requires.").

### C.    Plaintiff's Request for Declaratory Relief

Farmers Insurance's final argument is there is no case of actual controversy for Plaintiff to seek declaratory relief because Plaintiff's breach of contract claim for UIM benefits is time-barred.  (Doc. 10 at 7–8).  It contends Plaintiff cannot "'circumvent' the limitations period applicable to his contract claim 'by characterizing his action as one for a declaratory judgment.'"  (*Id.* at 8 quoting *Bruno v. Casella Waste Sys., Inc.*, 616 F. App'x 20, 21 (2d Cir. 2015)).   Plaintiff opposes, arguing he can predicate his request for declaratory relief on his bad faith claim.  (Doc. 13 at 12).

---

[17] For example, Plaintiff argued Farmers Insurance violated its obligation under the Arizona Administrative Code to inform Plaintiff of his rights under his Policy when it concealed from potential stacked benefits under *Heaton*.  (Doc. 13 at 10).

Plaintiff brought his third claim for declaratory judgment under the Arizona Uniform Declaratory Judgment Act, A.R.S. § 12-1831 *et seq.* (the "Act").  (Doc. 1-3 at 12, ¶ 43).  The Act provides a court with "the power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  A.R.S. § 12-1831.  Any person interested under contract "may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder." A.R.S. § 12-1832.  Similarly, Rule 57 allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" "[i]n a case of actual controversy within its jurisdiction[.]" Fed. R. Civ. P. 57 (citing 28 U.S.C. § 2201(a)).  Accordingly, Plaintiff seeks a declaration stating, "he is entitled to Stacked [UIM] Coverage on the Farmers policy."  (Doc. 1-3 at 13 ¶ 49).

The Court has already explained it will dismiss Plaintiff's breach of contract claim because it was not timely filed under A.R.S. § 12-555(C)(2).  *See supra* Section III.A.  Plaintiff thus does not have standing to obtain this exact relief.  However, the Court will permit Plaintiff to amend his bad faith claim. *See supra* Section III.B.  The Court will similarly permit Plaintiff to amend his claim for declaratory relief and clarify how such relief would relate to his bad faith claim.

The Court will therefore dismiss Plaintiff's claim for declaratory relief without prejudice under Rule 12(b)(6) and permit him leave to amend and cure the deficiencies identified above. *See*  Fed. R. Civ. P. 15(a).

## IV.   The Current Stay (Doc. 27)

Having resolved Farmers Insurance's Motion to Dismiss, the Court now revisits on its own accord the prior Order staying the case.  The Court initially found the following:

> Certain claims in Plaintiff's First Amended Class Action Complaint rely on the implications of [the Certified Questions on] A.R.S. § 20-259.01.  Thus, it [was] in the interest of judicial economy to wait until the Arizona Supreme Court clarifies this area of the law as it would avoid the use of resources on discovery and potentially fruitless motions.

(Doc. 27 at 3).  But because the Court will dismiss with prejudice Plaintiff's breach of

contract claim, the case no longer turns on the Arizona Supreme Court's resolution of the stacking issue under A.R.S. § 20-259.01 in this manner. *See supra* Section III.A.

Also relevant is the Court's clarification that Plaintiff's bad faith claim does not depend on whether the interpretation of the stacking issue in *Heaton* serves as binding precedent. *See supra* Section III.B(3). Rather, it depends on whether Farmers Insurance acted reasonably under the circumstances *at the time* of Plaintiff's claim for UIM benefits. *Id*. at III.B(1); *see also Deese*, 838 P.2d at 1268. In other words, whether the Arizona Supreme Court affirms or undermines *Heaton* in the near future does not influence the reasonableness of Farmers Insurance's conduct when handling Plaintiff's January 2019 Notice and July 2022 Demand. The reasonableness of Farmers Insurance's conduct is dependent on Farmers Insurance's knowledge at that time.

The Court will therefore lift the stay in this matter because Plaintiff's claims no longer rely on the implications of the Certified Questions on A.R.S. § 20-259.01.

**V.    Conclusion**

Farmers Insurance has met its burden under Rule 12(b)(6) to dismiss the FAC in its entirety. Plaintiff's breach of contract claim must be dismissed because it was not timely filed within the statute of limitations under A.R.S. § 12-555(C)(2). Plaintiff's bad faith claim must be dismissed because it is based on conclusory allegations and fails to state sufficient factual content. Plaintiff's claim for declaratory relief must be dismissed because his breach of contract claim is time-barred. However, Plaintiff is permitted leave to amend his claims for bad faith claim and declaratory relief because he has indicated there are additional allegations that might entitle him to relief. *See* Fed. R. Civ. P. 15(a). Last, the stay on this case is lifted because Plaintiff's claims no longer rely on the implications of the Certified Questions on A.R.S. § 20-259.01.

Accordingly,

**IT IS ORDERED** that the stay on this matter is **LIFTED**.

**IT IS FURTHER ORDERED** that Defendant Farmers Insurance's Motion to Dismiss (Doc. 10) is **GRANTED.** Plaintiff Charles Creasman's breach of contract claim

is **dismissed with prejudice.**  Plaintiff's claims for bad faith and declaratory relief are **dismissed without prejudice.**

**IT IS FINALLY ORDERED** that Plaintiff Charles Creasman may file a second amended complaint no later than **thirty (30) days** after the entry of this Order.  If Plaintiff does not timely do so, the Clerk of Court is kindly directed terminate this action without further order of this Court and enter judgment accordingly.

Dated this 12th day of July, 2023.

Honorable Diane J. Humetewa
United States District Judge