Brett L. Slavicek (No. 019306)
Justin Henry (No. 027711)
**THE SLAVICEK LAW FIRM**
5500 North 24th Street
Phoenix, Arizona 85016
Telephone: (602) 285-4435
Fax: (602) 287-9184
Email: brett@slaviceklaw.com
        justin@slaviceklaw.com

*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Charles Creasman, a married man; | **Case No. 22-cv-01820-PHX-DJH** |
| Plaintiff, | |
| vs. | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Farmers Casualty Insurance Company f/k/a Metropolitan Casualty Insurance Company, a Rhode Island Corporation, | |
| Defendant. | |

Plaintiff Charles Creasman, for his Second Amended Class Action Complaint against Defendant Farmers Casualty Insurance Company f/k/a Metropolitan Casualty Insurance Company ("Farmers"), alleges as follows:

## I.    THE PARTIES

1.     Charles Creasman is a married man and, at all relevant times, was an insured on an insurance policy with Defendant Farmers providing, among other coverages, uninsured and underinsured motorist coverage on multiple vehicles.

2.      Defendant Farmers is a corporation incorporated under the laws of the State of Rhode Island, and is duly licensed to administer insurance in the State of Arizona.

## II.      NATURE OF THE ACTION

3.      This matter concerns the unlawful denial of "Stacked Uninsured Motorist Coverage" and "Stacked Underinsured Motorist Coverage" to a class of insureds entitled to Uninsured Motorist and Underinsured Motorist coverage on policies issued by Defendant Farmers in Arizona.

4.      For purposes of this Complaint, "Stacked Uninsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Uninsured Motorist Coverage when there are either (1) multiple policies issued by Defendant Farmers providing Uninsured Motorist Coverage on multiple vehicles or (2) one policy issued by Defendant Farmers providing Uninsured Motorist Coverage on multiple vehicles.

5.      For purposes of this Complaint, "Stacked Underinsured Motorist Coverage" generally refers to the ability of insureds to obtain benefits under their Underinsured Motorist Coverage when there are either (1) multiple policies issued by Defendant Farmers providing Underinsured Motorist Coverage on multiple vehicles or (2) one policy issued by Defendant Farmers providing Underinsured Motorist Coverage on multiple vehicles.

6.      The denial of Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Farmers policy.  As such, the denial of benefits is unreasonable, is not

"fairly debatable," and instead places Defendant Farmers' own interests ahead of the class of policyholders and insureds.

7.    On August 20, 2016, Charles Creasman was walking in a crosswalk when he dove out of the way of non-party Randall Townsend's left-turning vehicle, which failed to yield to pedestrians in the crosswalk.

8.    As a direct and proximate result of the incident, Charles suffered severe and permanent physical, emotional and economic injuries.

9.    As a direct and proximate result of the collision, Charles incurred reasonable and necessary medical expenses in excess of $100,000.

10.    Non-party Randall Townsend was solely at fault for causing the August 20, 2016 incident.

11.    Non-party Randall Townsend held a policy with Progressive Direct Insurance Company providing bodily injury liability coverage in the amount of $100,000 per person, subject to an aggregate limit of $300,000 per collision.

12.    Progressive paid its available policy limits of $100,000 to Charles Creasman.

13.    Non-party Randall Townsend did not have any additional bodily injury liability, personal injury umbrella liability, or any other insurance coverage which may pay for the damages suffered by Charles Creasman.

14.    At the time of the collision, Charles Creasman held a policy with Defendant Farmers covering (1) his 2014 Infiniti Q50; (2) his 2000 Dodge Ram; (3) his 2005 Mini Cooper; and (4) his 2007 Bentley Continental under Policy No. 7674506760, effective

3

December 15, 2015 through December 15, 2016. Coverage during this period consisted of, among other things, Uninsured and Underinsured Motorist Coverage in the amount of $500,000 per person, subject to an aggregate limit of $500,000 per collision. A true and correct copy of the Farmers policy is attached hereto as **Exhibit A**.

15.    Defendant Farmers charged $46 for the Uninsured Motorist Coverage and $143 for the Underinsured Motorist Coverage on the 2014 Infiniti Q50. *See* Exhibit A, Farmers Policy at 002.

16.    Defendant Farmers charged $46 for the Uninsured Motorist Coverage and $143 for the Underinsured Motorist Coverage on the 2000 Dodge Ram. *See* Exhibit A, Farmers Policy at 002.

17.    Defendant Farmers charged $46 for the Uninsured Motorist Coverage and $143 for the Underinsured Motorist Coverage on the 2005 Mini Cooper. *See* Exhibit A, Farmers Policy at 002.

18.    Defendant Farmers charged $55 for the Uninsured Motorist Coverage and $166 for the Underinsured Motorist Coverage on the 2007 Bentley Continental. *See* Exhibit A, Farmers Policy at 002.

19.    Charles Creasman is an "insured" under the terms and conditions of the Uninsured and Underinsured Motorist Coverage of the Farmers policy.

20.    Non-party Randall Townsend's vehicle is an "underinsured motor vehicle" under the terms and conditions of the Farmers policy.

21.     On January 8, 2019, Charles submitted his written notice of intention to pursue an underinsured motorist claim to Defendant Farmers as required by A.R.S. § 12-555.

22.     Thereafter, Defendant Farmers paid the policy limits—$500,000.00—on **one of the vehicles** covered under Policy No. 7674506760.

23.     Defendant Farmers failed and/or refused to pay the remaining policy limits properly owed to Charles on the other three vehicles on the Farmers policy.

24.     On October 19, 2021, Judge Bolton issued a decision in *Heaton v. Metropolitan Group Prop. and Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021) concluding identical policy language failed to preclude Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage under Arizona law.

25.     Defendant Farmers knew, or at the very least, should have known of the Court's decision in *Heaton*.

26.     Defendant Farmers knew, or at the very least should have known, the Court's decision in *Heaton* meant that Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage was available on its policies, including the policy issued to Charles.

27.     Upon information and belief, Defendant Farmers conducted an investigation after *Heaton* was decided and concluded Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on its policies.

28.     Following *Heaton*, and despite knowing that Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on its policies, Defendant Farmers failed to advise its insureds—including insureds with closed claims files, but still within the applicable statute of limitations, like Charles—of the availability of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage.

29.     Defendant Farmers knew, or at the very least should have known, it was required to do so. *Nardelli v. Metropolitan Group Prop. & Cas. Ins. Co.*, 277 P.3d 789, 800 ¶ 54 (App. 2012); *see also* Ariz.Admin.Code § R20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance contract under which a claim is presented.").

30.     Upon information and belief, after *Heaton*, Defendant Farmers received demands for Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage—including on claims files that had previously been closed.

31.     Upon information and belief, after receiving demands for Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage following the decision in *Heaton*, Defendant Farmers paid Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage to insureds who demanded stacked benefits.

32.     If, however, an insured failed to specifically demand Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, Defendant Farmers

failed to inform its insureds of the available coverage and either failed and/or refused to pay stacked benefits to those insureds.

33.   Realizing its failure to comply with its requirement to advise its insureds of the availability of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage after *Heaton*, Defendant Farmers still considered and adjusted demands for Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage even if the statute of limitations had allegedly expired.

34.   Indeed, on July 21, 2022, Defendant Farmers responded to Charles' demand for Stacked Underinsured Motorist Coverage—despite that it apparently believed the statute of limitations expired on January 8, 2022—with a letter requesting additional information to properly evaluate his demand for stacked benefits.  *See* Letter from Gary Hudson, Jr., Esq. to Justin Henry, Esq., dated July 21, 2022, attached hereto as **Exhibit B**.

35.   The July 21, 2022 letter specifically stated: "The Company will need additional time to respond to that demand, and this response shall not constitute a rejection or acceptance of the same." *See* **Exhibit B**.

36.   The July 21, 2022 letter requesting additional information to make a final determination on the claim "sparked hope that additional benefits might be paid." *See Abney v. Liberty Mut. Ins. Co.*, 2012 WL 554741 at *3 ¶ 13 (Ariz.App. Feb. 21, 2012).

37.   Subsequent to the July 21, 2022 letter, Charles and Defendant Farmers— through counsel—engaged in settlement discussions regarding the records and proof

necessary to substantiate Charles' entitlement to the full amount ($1,500,000) of Stacked Underinsured Motorist benefits.

38.    Ultimately, the parties were unable to agree on the extent of proof necessary to establish Charles' entitlement to Stacked Underinsured Motorist benefits, and this lawsuit followed.  *See Abney v. Liberty Mut. Ins. Co.*, 2012 WL 554741 at *3 ¶ 13 (Ariz.App. Feb. 21, 2012) ("[T]ermination of settlement negotiations gives rise to a bad faith claim."); *see also Ness Western Sec. Life Ins. Co.*, 851 P.2d 122, 126 (App. 1992) ("The better reasoned rule is that the cause of action for insurance bad faith accrues at the time all settlement negotiations end and not at the time of the original casualty.") (internal brackets omitted).

39.    One of the reasons settlement discussions terminated was because Defendant Farmers disclaimed any additional Underinsured Motorist Coverage on the policy claimed stacked benefits were not available on the policy.

40.    Defendant Farmers took such a coverage position (1) after it had already lost the identical issue in *Heaton*; (2) after its own internal investigation following *Heaton* concluded Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on the policy; (3) after it had undertaken a claims handling practice to pay stacked benefits if such stacked benefits were specifically demanded.  As such, its position was contrary to Arizona law as well as the terms of the policy.  The coverage position, therefore, was unreasonable, not fairly debatable and made in bad faith.

41.     Specifically, Defendant Farmers alleged Stacked Underinsured Motorist Coverage was not available on the Farmers policy relying on policy language that fails to preclude Stacked Underinsured Motorist Coverage.

42.     The Limit of Liability clause provides:

**LIMIT OF LIABILITY**

**A.**     The limit of liability shown in the Declarations for "each person" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, due to **BI** to any one person as a result of any one accident. This includes all damages sustained by any other person as a result of that **BI**. Subject to this limit for "each person", the limit shown in the Declarations for "each accident" is the most **we** will pay for all damages, including prejudgment and post-judgment interest, arising out of **BI** sustained by two or more persons resulting from any one accident.

If a single limit is shown in the Declarations for "each accident" this is the most **we** will pay for any one accident, including prejudgment and post-judgment interest.

The limit of liability includes damages for care, loss of consortium, emotional distress, and loss of services or death.

This is the most **we** will pay regardless of the number of:
1. **insureds**;
2. claims made;
3. vehicles shown in the Declarations;
4. premiums shown in the Declarations; or
5. vehicles involved in the accident.

*See* Exhibit A, Farmers Policy at 037.[1]

---

[1] Terms in **bold** are defined terms in the Farmers policy.

43.    The Limit of Liability language does not preclude Stacked Underinsured Motorist Coverage.  *See Franklin v. CSAA Gen. Ins. Co.*, --- P.3d ---, 2023 WL 4833792 (Ariz. July 28, 2023); *State Farm Mut. Auto. Ins. Co. v. Lindsey*, 182 Ariz. 329, 331 (1995); *see also Heaton v. Metropolitan Group Prop. And Cas. Ins. Co.*, 2021 WL 6805629 (D.Ariz. Oct. 19, 2021).

44.    Even if the Limit of Liability language was sufficient to preclude Stacked Underinsured Motorist Coverage—it is not—the Limit of Liability language does not inform insureds of their right to select which coverage will apply in violation of A.R.S. § 20-259.01(H).

45.    Defendant Farmers failed to advise Charles, in writing, of his right to select which coverage would apply within 30 days of receiving notice of the collision as required by A.R.S. § 20-259.01(H).

46.    Accordingly, Stacked Underinsured Motorist Coverage is permitted even if the Limit of Liability language precluded stacking—which, it does not.  *See* A.R.S. § 20-259.01(H); *see also See Franklin v. CSAA Gen. Ins. Co.*, --- P.3d ---, 2023 WL 4833792 (Ariz. July 28, 2023); *Schwallie v. American Family Mut. Ins. Co.*, 2013 WL 4478697 (D.Ariz. Aug. 20, 2013).

47.    Charles was never paid the Underinsured Motorist benefits he was entitled to receive under the terms and conditions of the Farmers policy.

48.    Upon information and belief, Defendant Farmers routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple

policies, but refuses to pay Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Farmers' policies and in violation of Arizona law.

49.    Upon information and belief, Defendant Farmers routinely sells Uninsured Motorist Coverage, as well as Underinsured Motorist Coverage, and benefits on multiple vehicles insured on the same policy, but refuses to pay Stacked Uninsured Motorist and Stacked Underinsured Motorist benefits in violation of the terms and conditions of Farmers' policies and in violation of Arizona law.

50.    In every contract of insurance, there is inherent in it the covenant of good faith and fair dealing.

51.    The covenant of good faith and fair dealing requires, among other things, an insurer to "inform the insured about the extent of coverage and his or her rights under the policy and to do so in a way that is not misleading."  *Nardelli*, 277 P.3d at 800 ¶ 54; *see also* Ariz.Admin.Code § R20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance contract under which a claim is presented.").

52.    The covenant of good faith and fair dealing requires an insurer to, among other things, conduct a reasonable investigation, afford and makes its insured aware of all available coverages on the policy—even if they are not demanded—and treat all insureds with equal consideration.

53.     When Charles submitted his written notice of intention to pursue an underinsured motorist claim, he specifically requested that Defendant Farmers search all household policies to determine whether additional coverages or policies may apply.

54.     Defendant Farmers duty of good faith required it to advise Charles of all available coverages based on his specific request as well as controlling Arizona law.  *See Nardelli*, 277 P.3d at 800 ¶ 54; *see also* Ariz.Admin.Code § R20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance contract under which a claim is presented.").

55.     When Defendant Farmers received the written notice, it knew of the requirements of A.R.S. § 20-259.01(H) for precluding stacking.

56.     Many insurers, including Defendant Farmers' affiliated insurance companies under common management (*e.g.*, Farmers Insurance Company of America, Bristol West, etc.), include anti-stacking language in their policies that complies with § 20-259.01(H)'s anti-stacking requirements.

57.     For example, Farmers Insurance Company of America's Form Policy 56-5619 (6-14), which has been in place since June 2014, provides:

> If multiple policies or coverages purchased from **us** by an **insured person** on different vehicles provide Uninsured Motorist Coverage or Underinsured Motorist Coverage to an accident or claim, then the **insured person** shall select one of these policies or coverages to apply.  Only one coverage or policy selected by the **insured person** shall apply.

58.     Defendant Farmers knew, or at the very least, should have known how other insurers have interpreted § 20-259.01(H)'s requirements to preclude Stacked Uninsured

Motorist Coverage and/or Stacked Underinsured Motorist Coverage. *See Lennar Corp. v. Transamerica Ins. Co.*, 256 P.3d 635, 641 ¶ 20 (App. 2011) (evidence of how other insurers have interpreted the law may bear on whether insurer acted reasonably in disputing coverage).

59.    Defendant Farmers knew, or the very least should have known, how its sister insurance companies under common management, including Farmers Insurance Company of America, Bristol West, etc., interpreted § 20-259.01(H)'s requirements to preclude Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage.

60.    Defendant Farmers knew, or the very least should have known, how its sister insurance companies under common management, including Farmers Insurance Company of America, Bristol West, etc., drafted their insurance policies to comply with § 20-259.01(H)'s requirements to preclude Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage.

61.    Instead of following industry custom as well as its sister insurance companies under common management, Defendant Farmers made a conscious decision to ignore the custom and instead rely on its Limit of Liability clause—which did not comply with § 20-259.01(H)'s requirement—in an effort to evade § 20-259.01(H)'s requirements to preclude stacking. *See Lennar*, 256 P.3d at 641 ¶ 20 (App. 2011) (failure to comply with industry custom may be evidence of bad faith).

62.    Defendant Farmers' conscious decision to rely on the Limit of Liability provision to preclude stacking coverage instead of complying with § 20-259.01(H)'s

requirements constituted "creative policy drafting intended to evade statutory requirements." *See Franklin*, 2023 WL 4833792 at *1 ¶ 2.

63.    Defendant Farmers' conscious decision to rely on the Limit of Liability provision to preclude stacking coverage instead of complying with § 20-259.01(H)'s requirements was deceptive, misleading and intended to lead to underpaying uninsured and underinsured motorist claims on its policies.

64.    Defendant Farmers' conscious decision to rely on the Limit of Liability provision to preclude stacking coverage instead of complying with § 20-259.01(H)'s requirements placed its own interests ahead of its insureds resulting in underpayment of uninsured and underinsured motorist claims on its policies.

65.    Upon information and belief, when Defendant Farmers received Charles' demand for stacked benefits on the policy, it failed to conduct **any investigation**, let alone a reasonable coverage investigation, to determine whether stacked coverage was available on Policy No. 7674506760.

66.    Instead, Defendant Farmers defaulted to its coverage position denying Stacked Uninsured Coverage and/or Stacked Underinsured Motorist Coverage knowing its default coverage position was wrong and unsupported by Arizona law.

67.    Numerous other insurers—both before and after *Heaton*—determined stacked benefits were available on their policies and voluntarily paid stacked uninsured and/or underinsured motorist benefits to their insureds despite having similar or identical Limit of Liability Clauses in their policies.   The group of insurers who paid stacked

benefits despite having similar limit of liability language includes, but is not limited to, AAA, Allstate, American Family, Liberty Mutual, Nationwide, Safeco and Travelers.

68.    Defendant Farmers knew, or at the very least should have known, how other insurers interpreted the availability of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage on policies with similar or identical policy language.  *See Lennar*, 256 P.3d at 641 ¶ 20 (evidence of how other insurers have interpreted the law may bear on whether insurer acted reasonably in disputing coverage).

69.    Defendant Farmers knew, or at the very least should have known, other insurers interpreted similar or identical Limit of Liability language as being insufficient to preclude Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage under Arizona law and § 20-259.01(H).  *See Lennar*, 256 P.3d at 641 ¶ 20 (evidence of how other insurers have interpreted the law may bear on whether insurer acted reasonably in disputing coverage).

70.    Despite this knowledge, Defendant Farmers continued to deny stacked uninsured and/or underinsured motorist benefits to its insureds.  Instead, Defendant Farmers defaulted to its coverage position denying Stacked Uninsured Coverage and/or Stacked Underinsured Motorist Coverage knowing its default coverage position was wrong, unsupported by Arizona law and was in conflict with other Arizona insurers facing the same issue.

71.    In doing so, Defendant Farmers put its own interests ahead of its insureds, including Charles, and failed to give equal consideration to their claims.

72.    Defendant Farmers' failure to adequately investigate coverage is a breach of the covenant of good faith and fair dealing.

73.    Defendant Farmers' failure to treat Charles with equal consideration is a breach of the covenant of good faith and fair dealing.

74.    Defendant Farmers knew, or the very least should have known, its policy language did not comply with § 20-259.01(H).

75.    At the very latest, Defendant Farmers knew its policy language did not comply with § 20-259.01(H) and that stacked benefits were available on its policies, after *Heaton* was decided—which concluded identical policy language did not comply with § 20-259.01(H) and required Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage on the policy.

76.    After *Heaton* was decided, the duty of good faith and fair dealing required Defendant Farmers to reopen its closed claim files to identify insureds who may have been entitled to Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage.  *See Nardelli*, 277 P.3d at 800 ¶ 54; *see also* Ariz.Admin.Code § R20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance contract under which a claim is presented.").

77.    After *Heaton*, Defendant Farmers failed to reopen its closed claim files to identify and informs insureds, including Charles, of the availability of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage..

78.    Upon information and belief, Defendants Farmers made a conscious decision not to informs its policyholders, including Charles, of the availability of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage after *Heaton* was decided in an effort to avoid paying claims it knew should have been paid.

79.    After *Heaton*, Defendant Farmers failure to disclose the existence of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage on its policy breached its duty of good faith and fair dealing.  *See Nardelli*, 277 P.3d at 800 ¶ 54; *see also* Ariz.Admin.Code § R20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance contract under which a claim is presented.").

80.    Upon information and belief, Defendant Farmers made a conscious decision not to inform its insureds of the existence of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage in an effort to conceal the coverage from its insureds, including Charles.

81.    After *Heaton*, Defendant Farmers' decision not to inform its insureds of the availability of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage on closed claim files, including Charles', resulted in insureds not being aware of additional available coverage while they could still make a claim for those benefits.

82.    For example, *Heaton* was decided on October 19, 2021.  Yet, Defendant Farmers failed to reasonably and adequately informed Charles of the availability of

Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage. If it had done so, he could have pursued the additional benefits prior to the alleged expiration of his statute of limitations on January 8, 2022.

83.    Defendant Farmers, however, failed to advise Charles of the availability of the stacked benefits despite being required to do so.  *See Nardelli*, 277 P.3d at 800 ¶ 54; *see also* Ariz.Admin.Code § R20-6-801(D)(1) ("No insurer shall fail to fully disclose to first party claimants all pertinent benefits, coverages or other provisions of an insurance contract under which a claim is presented.").

84.    Ultimately, Defendant Farmers' failure to advise Charles of the available benefits resulted in the statute of limitations allegedly expiring on his claim preventing Charles from receiving benefits rightfully owed on the policy.

85.    In doing so, Defendant Farmers put its own interests ahead of its insureds, including Charles, and failed to give equal consideration to his claim.

86.    Upon information and belief, on other Uninsured and Underinsured Motorist claims after *Heaton*, Defendant Farmers conducted a reasonable coverage investigation to determine whether Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available on its policies.

87.    Upon information and belief, after conducting the investigation, Defendant Farmers concluded its policies provided stacked benefits.

88.    Thereafter, upon information and belief, when an insured specifically sought Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist

Coverage, Defendant Farmers voluntarily paid stacked benefits on its policies without issuing a reservation of rights or advising its insureds that it did not believe Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage was available.

89.    If, however, an insured did not specifically request Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, Defendant Farmers only paid the single vehicle limits rather than providing stacked benefits to its insureds. Moreover, Defendant Farmers failed to advise its insureds of the availability of stacked benefits despite knowing the benefits were available.

90.    Upon information and belief, Defendant Farmers—after concluding Stacked Uninsured Motorist Coverage and/or Underinsured Motorist Coverage was available on its policies—undertook a claims handling practice of denying Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage to its insureds unless the insureds specifically and unequivocally demanded stacked uninsured and/or underinsured motorist benefits.

91.    In doing so, Defendant Farmers undertook a claims handling practice of treating similar insureds differently depending on whether the insureds specifically demanded stacked benefits despite knowing stacked benefits were available on its policies.

92.    Defendant Farmers decision to only pay stacked benefits to insureds who specifically demanded Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, while simultaneously denying the same benefits to

insureds who did not specifically demand stacked benefits—including insureds with closed claims files that were still within the applicable statute of limitations, like Charles—breached its duty of good faith and fair dealing and failed to treat those insureds, including Charles, with equal consideration.

93.     Defendant Farmers' failure to treat Charles with equal consideration is a breach of the covenant of good faith and fair dealing.

94.     Defendant Farmers' failure to pay the contractual Stacked Underinsured Motorist benefits owed under the terms and conditions of the Farmers Policy is a breach of the covenant of good faith and fair dealing.

95.     Defendant Farmers' refusal to stack the available Underinsured Motorist Coverage is contrary to well-established Arizona law as well as the language of the Farmers policy.  As such, Defendant Farmers' coverage position is unreasonable, is not "fairly debatable," and instead places Defendant Farmers' own interests ahead of its insureds, including Charles.

96.     Defendant Farmers' refusal to advise insureds—including insureds with closed claims files, but still within the applicable statute of limitations, like Charles—of the availability of Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage is contrary to well-established Arizona law.  As such, Defendant Farmers' failure was unreasonable, is not "fairly debatable," and instead places Defendant Farmers' own interests ahead of its insured, Charles.

97.     Defendant Farmers' refusal to provide Stacked Underinsured Motorist Coverage is a breach of the covenant of good faith and fair dealing.

98.     As a direct and proximate result of Defendant Farmers' breach of the covenant of good faith and fair dealing, Charles suffered damages.

99.     Upon information and belief, Defendant Farmers acted with a consistent pattern to undermine the security of its own insurance policy to the detriment of its insureds, including Charles, to the extent that it constitutes a conscious disregard of the substantial likelihood that such conduct is likely to cause harm and constitutes conduct sufficient to incur a penalty of punitive damages.  Indeed, Defendant Farmers' actions were **__intended__** to cause harm to its insureds establishing a claims handling practice designed to result in underpayment of uninsured and underinsured motorist claims.

100.    Charles is, therefore, entitled to punitive damages in an amount sufficient to stop such conduct and deter such future conduct.

## III.    JURISDICTION AND VENUE

101.    All acts alleged herein arose from occurrences within the State of Arizona.

102.    The claims are subject to the jurisdiction of the Superior Court for the State of Arizona and they request compensation in amounts above the minimum jurisdictional limits for this Court.

103.    Venue in this Court is proper.

104.    This Court has jurisdiction over the parties.

## IV.    CLASS ALLEGATIONS

105.    Charles brings this action pursuant to Rule 23 of the Arizona Rules of Civil Procedure.  He brings this action on his own behalf and on behalf of all class participants pursuant to Rules 23(a), 23(b)(2) and 23(b)(3) of the Arizona Rules of Civil Procedure.

106.    Charles proposes the following class of individuals:

107.    The Class shall consist of individuals:

A.  Who are "insureds" on Farmers insurance policies issued, and in force, in Arizona from August 20, 2016 through present;

B.  Who were involved in a motor vehicle collision with an uninsured or underinsured motor vehicle;

C.  Where the insurance policies issued by Defendant Farmers provided Uninsured Motorist Coverage or Underinsured Motorist coverage on more than one vehicle—either on the same policy or separate policies;

D.  Where Defendant Farmers paid the single vehicle limits of Uninsured Motorist Coverage or Underinsured Motorist Coverage, but either failed or refused to pay any additional Uninsured Motorist or Underinsured Motorist benefits on the remaining vehicles.

108.    The requirements of Rules 23(a) and 23(b)(3) of the Arizona Rules of Civil Procedure are met as set forth below.

///

///

### A.    Numerosity

109.    Under federal law, more than forty class members satisfies the numerosity requirement.    1 NEWBERG ON CLASS ACTIONS, §3.05 at 3-25 (3rd Ed. 1992); MOORE'S FEDERAL PRACTICE, § 23-22(3)(a) (Bender 3rd Ed. 1999); *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3rd Cir. 2001); *Perez v. First American Title Ins.*, 2009 WL 2486003 at *2 (D.Ariz. 2009) ("Generally, 40 or more members will satisfy the numerosity requirement.").

110.    With regard to the standard of proof necessary to satisfy class numerosity requirements, "[i]t is not necessary that the members of the class be so clearly identified that any member can be presently ascertained.  The court may draw a reasonable inference of the size of the class from the facts before it."  *Sherman v. Griepentrog*, 775 F.Supp. 1383, 1389 (D.Nev. 1991) (internal citations omitted).

111.    Upon information and belief, Defendant Farmers routinely denies Stacked Uninsured Motorist Coverage and Stacked Underinsured Motorist Coverage to its insureds and the numerosity requirement is easily satisfied with respect to the Class.

### B.    Commonality

112.    The commonality the "existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Parra v. Bashas, Inc.*, 536 F.3d 975, 978 (9th Cir. 2008).

113.    The legal issues are not just shared, they are virtually identical.  Specifically, the legal issue regarding whether Class Members are entitled to Stacked Uninsured

Case 2:22-cv-01820-MTL    Document 30    Filed 08/10/23    Page 24 of 28

Motorist Coverage and Stacked Underinsured Motorist Coverage on Farmers policies is identical. While there may be occasional changes to the policy language for each respective Class Member, the legal issue remains the same.

114. Moreover, the policy language for the Limit of Liability clause is **underlined_identical for Uninsured and Underinsured Motorist coverage**. *Compare* Exhibit A at Farmers Policy 034 *with* Exhibit A at Farmers Policy 037. Thus, there is no difference, from a legal standpoint, regarding whether stacking is permitted on Uninsured Motorist coverage or Underinsured Motorist coverage, *i.e.*, either stacking is permitted on both coverages, or it is not permitted on either coverage.

## C. Typicality

115. "[U]nder the rule's permissive standards, representative claims are 'typical' is they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

116. Charles is in a factual and legal posture identical to the Class Members. He is an insured on an insurance policy with Defendant Farmers insuring multiple vehicles with Underinsured Motorist Coverage. He was paid the available policy limits on one of the vehicles, but Defendant Farmers either failed or refused to pay any remaining underinsured motorist benefits on the remaining vehicles of the policy.

117. Charles is also in a factual and legal posture identical to the Uninsured Motorist Class Members. He is an insured on an insurance policy with Defendant Farmers insuring multiple vehicles with Uninsured Motorist Coverage. Although his collision did

not implicate Uninsured Motorist coverage, his claim is typical of an uninsured motorist claim with regard to the legal issues that need to be decided.   Charles was paid the available policy limits on one of the vehicles, but Defendant Farmers either failed or refused to pay any remaining benefits on the remaining vehicles of the policy.

**D.    Adequacy**

118.    Under Arizona law, the Class Attorney must be qualified, experienced and reasonably capable.  Lead Plaintiffs cannot collude with the defendants and must not have interests that are obviously antagonistic to the interests of the class they seek to represent.  *See Lennon*, *supra*, at 309.  The burden of proving inadequacy is on the defendant.  *See Lewis v. Curtis*, 671 F.2d 779, 788 (3rd Cir. 1982).

119.    To determine whether obvious antagonism of interests exists, Federal courts look to whether (1) a lead plaintiff is a spouse, family member, or employee of counsel; (2) if any counsel if a class member; (3) if there are unusual bonus fees for lead plaintiffs which would create a conflict with class members; (4) whether lead plaintiffs will promptly move for certification.  *See Lyon v. State of Arizona*, 80 F.R.D. 665, 667-68 (D.Ariz. 1978).

120.    None of the Class Attorneys are members of the Class.

121.    No Lead Plaintiff is a spouse, family member or employee of the Class Attorney.

122.    Lead Plaintiffs will promptly move for certification.

123.    No bonus fees or incentives have been promised to the Lead Plaintiffs.

124.    The Class Attorneys are also qualified, experienced and reasonably capable, having litigated successfully in this area of law, and having been counsel in prior class actions.

**E.    Rule 26(B)(3)**

125.    Rule 23(b)(3) certification is appropriate if "questions of law or fact common to the members of the class predominate over any questions affecting individual class members, and . . . a class action is superior to other available methods for fair and efficient adjudication of the controversy."  Fed.R.Civ.P. 23(b)(3).

126.    Common questions of law and fact (*i.e.*, whether Defendant Farmers acted in bad faith when it denied Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage to its insureds when it knew or should have known such benefits were available on the policy) lie at the heart of this matter.

127.    With respect to superiority, Rule 26(b)(3) directs the Court to consider (1) the desirability of concentrating claims in this forum; (2) difficulties of management; (3) current claims by class members; (4) class members' interest in controlling their individual claims.  *See* Fed.R.Civ.P. 23(b)(3).

128.    This Court is the only desirable forum as all Class Members were insured under Farmers policies issued in Arizona.

129.    The difficulty in managing the Class is minimal as all policies were issued to Class Members in Arizona, the facts related to the coverage dispute are remarkably uniform, and the case predominately turns on one legal issue.

130.    While there may already be some pre-existing litigation involving Stacked Uninsured Motorist Coverage and/or Stacked Underinsured Motorist Coverage, those cases, upon information and belief, are few and insufficient to make a class action unproductive.

131.    With respect to Class Members' individual interests in controlling the claims, "there is no additional advantage in individual members controlling the prosecution of separate actions." *See Hanlon*, *supra*, at 1023.  Indeed, "[t]here would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *See id.*

132.    The proposed Classes, therefore, meets the requirements for certification under Rule 23(b)(3).

133.    Accordingly, Charles requests this Court certify the bad faith claims as a class action pursuant to Rule 23(b)(3).

WHEREFORE, Charles Creasman prays for Judgment against Farmers Casualty Insurance Company as follows:

1.    Certify this case as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure;

2.    For bad faith;

3.    For special damages, in an amount to be proved at trial;

4.    For general damages in a fair, just and reasonable sum in excess of the jurisdictional limits of this Court;

5.    For his costs incurred herein;

6.    For punitive damages in a fair, just and reasonable sum;

7.    For pre- and post-judgment interest at the prevailing statutory rate per annum; and

8.    For such other and further relief as this Court may deem just and proper.

DATED this 10th day of August, 2023.

**THE SLAVICEK LAW FIRM**

*/s/ Justin Henry*
Brett L. Slavicek
Justin Henry
*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify on August 10, 2023, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrant:

Jared Sutton, Esq.
Jennifer Lee-Cota, Esq.
**PAPETTI SAMUELS WEISS MCKIRGAN LLP**
16430 North Scottsdale Road, Suite 290
Scottsdale, Arizona 85254
*Attorneys for Defendant*

*/s/ Natalie Newell*